UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA           :

   - v. -                                      :       16 Cr. 91 (PKC)

SCOTT TUCKER and                          :
TIMOTHY MUIR
                                                  :
                        Defendants.
                                                  :
------------------------------------------------------------x

# THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTIONS FOR A BILL OF PARTICULARS AND TO STRIKE PORTIONS OF THE INDICTMENT

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States of America

Niketh Velamoor
Hagan Scotten
Assistant United States Attorneys
   Of Counsel

The Government respectfully submits this memorandum in response to defendant Timothy Muir's Motion for a Bill of Particulars ("BoP Motion") and Motion to Strike Surplusage From the Indictment ("Surplusage Motion"). For the reasons set forth below, both Motions should be denied.

I.  Background

The 33-page indictment in this case charges Muir and his co-defendant Scott Tucker in nine counts arising from their unlawful operation of a group of payday lending businesses owned and controlled by Tucker (the "Tucker Payday Lenders"). As alleged in the Indictment, the Tucker Payday Lenders extended loans at interest rates far in excess of twice the allowable rate under state laws, in violation of Title 18, United States Code, Sections 1962(c) and 1962(d) (Counts One through Four, the "RICO Counts"), and without the truthful and accurate disclosures required by the Truth in Lending Act, Title 15, United States Code, Section 1611 (Counts Five through Nine, the "TILA Counts").

With respect to the RICO Counts, the Indictment identifies the primary businesses that made up the "Tucker Payday Lending Organization," including the Tucker Payday Lenders and AMG Services, Inc. ("AMG"), the company that conducted the servicing operations for these Lenders.  (¶ 2). The Indictment describes the roles the defendants played in these companies. Tucker owned and controlled the relevant businesses.  (¶¶ 1, 30).   Beginning in or about 2006, Muir acted as the general counsel of AMG.  (¶¶ 3, 30).  The Indictment also identifies states whose usury laws the Tucker Payday Lenders violated.  (¶¶ 8-10).  The Indictment further discusses methods used to disguise the loans' violations of state law by creating the appearance that the loans were made by a Delaware-chartered bank and, later, three Indian tribes (¶¶ 19-27), to include Muir's role in effecting those deceptions (¶¶ 22, 26-27).  Finally, the Indictment

1

describes how the loans violated specific subsections of RICO. (¶¶ 28-43). Those statutory allegations are divided into four counts—a conspiracy count and three substantive counts organized according to the Indian Tribe that purported to own the lender or lenders in question—and contain examples of fifteen specific loan collections that violated RICO. (¶¶ 37, 40, 43).

With respect to the TILA Counts, the Indictment describes the loan terms the Tucker Payday Lending Organization purported to offer. (¶¶ 13-14). The Indictment then explains how the actual terms of the loans were far different than the disclosed terms. (¶¶ 15-16). It further details how the borrowers were confused, and harmed, by the difference between the loans' purported and real terms, leading to complaints and investigations by regulators. (¶¶ 17-18). And as with the RICO Counts, the Indictment closes with statutory allegations tracking the text of the federal law violated by those false and misleading disclosures. (¶¶ 44-45).

Beginning on March 4, 2016, the Government has provided discovery to the defendants. The discovery consists primarily of millions of pages of documents, comprising loan forms, financial reports, emails between the defendants and other parties, and other papers recording, in great detail, the lending-related activities of the Tucker Payday Lending Organization and the defendants. The Government has organized the documents by source, such as the banks, Indian Tribes, and lending companies that participated in the charged offenses, and included a master index to the discovery. Most if not all of these documents are in a searchable format so that the defendants can peruse them electronically just as the Government did during its investigation.[1]

---

[1] During its investigation, the Government received many documents in a searchable electronic format. The documents have been produced to the defendants in the same format that they were received, so that they may organize, search, and review them with the same ease as the Government. Given the volume of the documents and the format in which some documents were received, however, the Government cannot be certain every document has been produced in a searchable format.

## II. The Motion For a Bill of Particulars Should be Denied

### a. Applicable Law

A motion for a bill of particulars should be granted only where necessary (1) to inform the accused of the charge against him with sufficient precision to enable him to prepare his defense and avoid surprise; and (2) to enable the accused to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense. *See Wong Tai* v. *United States*, 273 U.S. 77, 82 (1927); *United States* v. *Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). A bill of particulars "is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial." *United States* v. *Kazarian*, No. 10 Cr. 895, 2012 WL 1810214, at *24-*26 (S.D.N.Y. May 18, 2012); *United States* v. *Strawberry*, 892 F. Supp. 519, 526 (S.D.N.Y. 1995). Instead, a "bill of particulars is 'required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" *United States* v. *Fea*, 2011 WL 2119708, *1 (S.D.N.Y. May 24, 2011) (quoting *United States* v. *Torres*, 901 F.2d 205, 234 (2d Cir. 1990)); *United States* v. *Gibson*, 175 F. Supp. 2d 532, 536 (S.D.N.Y. 2001) ("[A] bill of particulars is not a matter of right.").

"It is not enough that the information would be useful to the defendant; if the defendant has been given adequate notice of the charges against him, the government is not required to disclose additional details about its case." *United States* v. *Payden*, 613 F. Supp. 800, 816 (S.D.N.Y. 1985). A bill of particulars should not be employed in an attempt to "lock the government into its proof." *United States* v. *Rigas,* 258 F.Supp.2d 299, 304 (S.D.N.Y.2003); *see also United States* v. *Mahabub*, No. 13 Cr. 908, 2014 WL 4243657, *2 (S.D.N.Y. Aug. 26, 2014); *United States* v. *Samsonov*, 07 Cr. 1198, 2009 WL 176721, at *2-4 (S.D.N.Y. Jan. 23,

2009) (bill of particulars should not be "misused to compel disclosure of how much the Government can prove, nor to foreclose the Government from using proof it may develop as the trial approaches"). Nor is the function of a bill of particulars "to allow defendants to preview the evidence or theory of the Government's case." *United States* v. *Taylor*, 707 F. Supp. 696, 699 (S.D.N.Y. 1989) (citations omitted); *United States* v. *Zemlyansky*, 945 F. Supp. 2d 438, 484-85 (S.D.N.Y. 2013) ( "It is improper to use a bill of particulars to compel the Government to disclose the manner in which it will prove the charges or preview its evidence or legal theory." (quoting *United States* v. *Muyet,* 945 F.Supp. 586, 598-99 (S.D.N.Y.1996) (alteration omitted)).

In conspiracy cases, a bill of particulars is not properly sought to provide detailed information about the conspiracy, such as how and when the conspiracy was formed, or when each participant entered it. *United States* v. *Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989). Where the indictment "describes in careful detail the nature and goals of the charged conspiracy," and "discloses sufficient information to inform the defendants adequately of the charges against them," a bill of particulars is not warranted. *United States* v. *Ferrarini*, 9 F. Supp. 2d 284, 299 (S.D.N.Y. 1998) (denying request for particularity of defendant's specific role and the actions taken by the defendant); *Kazarian*, 2012 WL 1810214, at *26 (denying request for particulars about "the dates and locations of acts and conduct [the defendant] is alleged to have performed, and his alleged role in the charged conspiracies," because "[t]he Government need not disclose the date a defendant is alleged to have joined the conspiracy, the identities of all co-conspirators, the precise dates and locations when and where the defendant assisted the conspiracy, and the means by which defendants furthered the conspiracy."); *United States* v. *Bin Laden*, 92 F. Supp. 2d 225, 242 (S.D.N.Y. 2000) ("[R]equests, such as those made by the Defendants here, for particulars as to when, where, how,

and with whom each individual defendant joined an alleged conspiracy have almost uniformly been denied.").

In addition, if the information sought by a defendant is provided in the indictment or through some other means, a bill of particulars is not necessary. *See Bortnovsky*, 820 F.2d at 574; *Kazarian,* 2012 WL 1810214 (noting the "enormous amount of discovery material," which "provide[s the defendant] with much of the information sought in the request for a bill of particulars").

### b. Discussion

There is no basis for a bill of particulars in this case. The charges against Muir are straightforward: He participated in extending loans at more than twice the rate allowed under state law, accompanied by false and misleading disclosures about the terms of those loans. The Indictment sets forth in far more than the usual detail which loans are at issue and how they violated federal law (¶¶ 1-10, 12, 28-43), as well as Muir's role in extending and collecting those loans (¶¶ 3, 22-23, 26-27, 30). He cannot plausibly claim that the Indictment lacks sufficient detail to allow him to plead double jeopardy against a subsequent prosecution for the same acts, or to understand the acts of which he is accused. Instead, Muir seeks information that he already possesses, that is not properly sought by a bill of particulars, or both.

For example, Muir seeks "[i]dentification of what is false and inaccurate" with respect to the TILA disclosures made by the Tucker Payday Lending Organization. (BoP Motion at 6). But the Indictment could scarcely lay this out more precisely. It explains what TILA requires to be disclosed, namely "the finance charge, the annual percentage rate, and the total of payments that reflect the legal obligation between the parties to the loan." (¶ 11). The Indictment then details the finance charge, annual interest rate, and total of payments disclosed by the Tucker

Payday Lenders (¶¶ 12-14), followed by explaining how the actual finance charge, annual interest rate, and total of payments for the loans were entirely different—and far more onerous for the borrower—than those disclosed, even illustrating the point with a chart (¶¶ 15-16). The Indictment goes on to describe complaints that these loans "were materially deceptive, misleading, and usurious" (¶ 17). There is nothing more a bill of particulars could do to state how the disclosures in question were false and inaccurate.

Similarly, Muir asks that a bill of particulars "[i]dentify the State lawsuits" lodged against the Tucker Payday Lenders, and provide details about them. (BoP Motion at 4). But Muir is plainly familiar with those lawsuits, given that he discusses some of them at length in a filing he made the same day as the Motion. (*See* Docket Entry 44, at 15-20). This request thus does not seek information necessary to preparing his defense. Instead, it impermissibly requests "a preview of the evidence" and "the theory of the government's case." *Taylor*, 707 F. Supp. at 699. Indeed, it is fairly transparent in this attempt, asking the Government to identify specific "documents" it would use as proof, and how those documents would "support" the Indictment's statements concerning the state lawsuits. (*See* BoP Motion at 4).

Nor is Muir entitled to an explanation of how and why various legal maneuvers engaged in by the Tucker Payday Lending Organization were false, misleading, or shams (BoP Motion at 5-6). *See Zemlyansky*, 945 F. Supp. 2d 438, 484-85 (S.D.N.Y. 2013) (denying request for "specification of the false and fraudulent representations . . . and the respect to which the statement is false"). That is especially so given that the false statements in question are not even an element of the RICO Counts against Muir—they are simply further evidence of those crimes, and thus need not have been mentioned in the Indictment at all, much less elaborated upon. *See United States* v. *Alfonso*, 143 F. 3d 772, 776 (2d Cir. 1998) ("[A]n indictment need do little more

6

than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."). By contrast, where the false or misleading statements are part of the crime itself, as in the TILA counts, the Indictment identifies the inaccurate statements at issue.

The same is true of Muir's request that the Government specify "how" he participated in structuring the repayment schedules for the loans. (BoP Motion at 5). Structuring repayment schedules is not an element of the TILA Counts, but rather an evidentiary detail helping to prove the unlawful disclosures that do constitute the crime. Muir thus has particularly little claim to specification of the Government's exact theory of how, and to what extent, he was involved in this secondary matter. *See Ferrarini*, 9 F. Supp. 2d at 299-300 (denying request for particularity of defendant's specific role and the actions taken by the defendant); *Kazarian*, 2012 WL 1810214 at *26 (denying request for particulars about "the dates and locations of acts and conduct [the defendant] is alleged to have performed, and his alleged role in the charged conspiracies").

Muir's remaining requests concern the identities of persons specified, but not named, in the Indictment. With respect to Muir's request for the identities of the fifteen borrowers whose loans are described in paragraphs 37, 40, and 43 (BoP Motion at 6), the Government has separately disclosed that information to counsel for Muir, as well as counsel for Tucker (who requested this information by letter). *See Bortnovsky*, 20 F.2d at 574 ("Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required.")

With respect to Muir's request that the Government identify the co-conspirators mentioned in the Indictment (BoP Motion at 5), such requests are routinely denied. *See, e.g.*,

7

*United States* v. *Calvente*, No. 12 Cr. 732, 2013 WL 4038952, *1-*2 (S.D.N.Y. July 26, 2013) (collecting cases); *Kazarian*, 2012 WL 1810214, at *26; *United States* v. *Bin Laden*, 92 F. Supp. 2d at 242. To be sure, courts have made exceptions where the identity of co-conspirators was deemed essential to preparation of a defense. *See United States* v. *Nachamie*, 91 F. Supp. 2d 565, 572-73 (S.D.N.Y. 2000). But this is not such a case. The Indictment specifies one particular co-conspirator ("CC-1" in ¶ 20) whose identity is already well-known to defendants, and which the Government has confirmed by separate letter. Other than CC-1, no particular co-conspirator is alleged to have undertaken any particular act, and no element of the offenses depends on showing that Tucker or Muir conspired with any other particular person.[2] Instead, the Indictment simply alleges that "others known and unknown" acted alongside the defendants. Given that the Tucker Payday Lending Organization consisted of over 600 employees at its peak (¶ 2), that fact is obvious, and should not require the Government to delineate between who else may have been sufficiently culpable to be deemed a co-conspirator rather simply an employee or associate of the defendants whose participation in the Organization's crimes may have been unwitting. *See, e.g.*, *United States* v. *Rodriguez*, No. 99 Cr. 367, 1999 WL 820558, *1-*2 (S.D.N.Y. Oct. 13, 1999) (denying request for identification of co-conspirators where none were alleged to have committed any overt acts and identity of the conspiracy as a whole was clear).

---

[2] Indeed, other than with respect to CC-1, the term "co-conspirator" appears exactly three times in the Indictment. Specifically, ¶ 15 states that "TUCKER and his co-conspirators" structured loan repayments as part of the TILA Counts. Because the TILA Counts are not a conspiracy offense, and because structuring payments is not an element of the TILA Counts, this phrase does nothing more than avoid the inaccurate implication that Tucker structured those payments by himself. Paragraph 32 states that "SCOTT TUCKER and TIMOTHY MUIR, the defendants, and their co-conspirators, and other members and associates," participated in the Tucker Payday Lending Organization, which simply indicates the obvious fact that Tucker and Muir were not alone in the enterprise, without delineating who else in Tucker's organization might have had sufficient culpability to be deemed a co-conspirator rather than a member or associate. Essentially the same function is achieved by the language in paragraph 34, alleging that "the defendants and their co-conspirators" agreed to participate in the collection of unlawful debts.

### III. The Motion To Strike Surplusage Should be Denied

#### a. Applicable Law

"Although the Federal Rules of Criminal Procedure grant the Court authority to strike surplusage from an indictment, it has long been the policy of courts within the Southern District to refrain from tampering with indictments." *United States* v. *Bin Laden*, 91 F. Supp. 2d at 621 (internal quotation marks, alterations, and citations omitted). "Motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory or prejudicial." *United States* v. *Scarpa*, 913 F.3d 993, 1013 (2d Cir. 1990). "[I]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." *Id*. (internal quotation marks omitted); *see also United States* v. *Mulder*, 273 F.3d 91, 99 (2d Cir. 2001) (quoting *Scarpa*). "Given this exacting standard, such motions [to strike] are rarely granted." *United States* v. *Coffey*, 361 F. Supp. 2d 102, 123 (E.D.N.Y. 2005).

In setting forth allegations in an indictment, the Government is not limited to an enumeration of the bare elements of a crime; instead, an indictment may be used to provide background to the charged criminal conduct, to describe the circumstances, means, and methods, of an offense, and to describe evidence that is otherwise admissible at trial. "Statements providing background are relevant and need not be struck." *United States* v. *Mostafa*, 965 F. Supp. 2d 451, 466 (S.D.N.Y. 2013) (*citing Mulder*, 273 F.3d at 99). Allegations also will not be stricken where they elucidate the circumstances, means, and methods of a charged scheme or would be admissible, in the alternative, under Rule 404(b) of the Federal Rules of Evidence. *See United States* v. *Hernandez*, 85 F.3d 1023, 1030 (2d Cir. 1996); *United States* v. *Markoll*, No. 300 Cr. 133, 2001 WL 173763, at *2-*3 (D. Conn. Jan. 24, 2001).

In terms of timing, "[c]ourts in this district routinely await presentation of the Government's evidence at trial before ruling on a motion to strike." *Mostafa*, 965 F. Supp. 2d at 467 (*citing*, *inter alia*, *Scarpa*, 913 F.2d at 1012); *see also United States* v. *Ahmed*, No. 10 Cr. 131, 2011 WL 5041456, at *3 (S.D.N.Y. Oct. 21, 2011). As multiple courts have concluded, "[t]here is little or no purpose in attempting to predict in advance of trial what evidence will prove admissible or how specific allegations relate to the overall charges." *United States* v. *Smith*, 985 F. Supp. 2d 547, 612 (S.D.N.Y. 2014) (*quoting United States* v. *Butler*, 351 F. Supp. 121, 124 (S.D.N.Y. 2004)).

### b. Discussion

Muir's motion is both premature and meritless, and should be denied. As the evidence at trial will demonstrate, the allegations that Muir seeks to strike are necessary to the elements of the charged crimes or relevant to proving those crimes, and neither inflammatory nor prejudicial.

Muir's objection to the Government's use of the defined terms "Tucker Payday Lenders" and "Tucker Payday Lending Organization" to refer to the businesses at issue in the Indictment is meritless. First, it is difficult to understand how these terms could be prejudicial to Muir, whose name does not even appear in the terms at issue. In any event, the objection would be equally meritless if made by Tucker. The Indictment alleges that, although Tucker concealed his ownership and control of the payday lenders through sham arrangements with a Delaware-chartered bank and Indian tribes, he was, in reality, the true lender in interest. (*See, e.g.*, ¶ 1 ("Although other people and entities" were listed as the owners of the payday lending businesses at issue, "Tucker was the source of the funds lent to customers…and Tucker bore the risk of non-repayment of the loans.")). Simply naming the payday lending businesses after the lender is descriptive and neither inflammatory nor prejudicial to anyone.

10

Contrary to Muir's characterization, *United States* v. *Vastola* supports this conclusion. *See* 899 F.2d 211, 232 (3d Cir. 1990). In *Vastola*, the Third Circuit concluded that the government's naming of the enterprise after one of the defendants caused no potential for prejudice because "[w]hile the co-conspirators did not specifically refer to the enterprise as the 'Vastola Organization,' the record clearly show[ed] that Vastola was in charge . . . [and] the majority of illegal loans issued by the enterprise were subject to Vastola's approval[.]" *Id*. The court further explained that "[h]ad the indictment read, 'Vastola's organization,' no reasonable claim of prejudice could be made, as the government did prove the existence of an organization headed by Vastola" and therefore the court could not "imagine that use of the practically identical phrase, the 'Vastola Organization,' conveyed anything to the jury that was not already amply demonstrated by the evidence." *Id*. Similarly here, calling the payday lenders "Tucker's Payday Lenders" would have been no different than using the terms used in the Indictment and, most importantly, will not convey anything to the jury that will not be amply demonstrated by the evidence.

Muir's objection to references to the time period of the charged conduct is also meritless. Rather than a motion to strike surplusage, he appears to be asking the Court to rewrite the Indictment in a way that specifies his view regarding the time period of his involvement or "order the government to proffer its evidence regarding the timeline of [his] involvement." (Surplusage Motion at 5). Regardless of what exactly Muir is seeking, his request should be rejected. As discussed above, the Government is not required to specify the date a defendant is alleged to have joined the conspiracy or the precise dates when the defendant assisted the conspiracy. *See Kazarian*, 2012 WL 1810214, at *26. And in any event, the Indictment clearly states that Muir's involvement began in or about 2006. (*See* ¶ 3). That the Indictment *also*

contains allegations concerning the history of the charged RICO enterprise, and criminal acts Tucker and others undertook as part of the enterprise before Muir joined the conspiracy, would hardly be improper even if Tucker were not also charged in the Indictment. *See, e.g.*, *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992) (evidence admissible "to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between participants in the crime developed"); *United States* v. *Badalamenti*, 794 F.2d 821, 827-28 (2d Cir. 1986) (admitting co-conspirator statements against defendant made prior to defendant joining the conspiracy). Given all that, Muir has no grounds to complain that the Indictment describes a conspiracy whose duration predates his own involvement. And to the extent Muir wishes to dispute factual allegations based on the date he became affiliated with Tucker—such as claiming that he could not have been an architect of schemes to conceal the loans' source (*see* Surplusage Motion at 6)—that is simply a question of fact for the jury.[3]

The Court should also reject the defendant's objections to using the defined terms "Prohibited Payday Loan States" and "Regulated Payday Loan States" to describe the kinds of state laws violated by the Tucker Payday Lenders. The usury laws of New York and other states are plainly relevant to the charged offenses, and Muir fails to articulate any reason why the

---

[3] Muir also objects to statements in the Indictment concerning the extent of his knowledge about certain facts relevant to the conspiracy. (Surplusage Motion at 5). It goes without saying that a defendant can gain knowledge of events that took place prior to his joining the conspiracy. *See Badalamenti*, 794 F.2d at 828 ("It is reasonable to expect that a new recruit can be thought to have joined with an implied adoption of what had gone on before to enhance the enterprise of which he is taking advantage, where, as here, there is sound reason to believe that he joined when he was generally aware of what his new partners had been doing and saying on behalf of the enterprise." (citation and internal quotation marks omitted)). Moreover, Muir "'need not have joined a conspiracy at its inception in order to incur liability for the unlawful acts of the conspiracy committed both before and after he . . . became a member [.]'") *United States* v. *Santos*, 541 F.3d 63, 73 (2d Cir. 2008) (*quoting United States* v. *Rea*, 958 F.2d 1206, 1214 (2d Cir. 1992)).

Government's description of the various state laws or its grouping of those laws into two categories is in any way inaccurate or inflammatory. The Indictment explains the difference between the laws of states that prohibit all payday lending (what the Indictment terms "Prohibited Payday Loan States") and the laws of states that permit such lending under certain circumstances ("Regulated Payday Loan States"), and there is nothing about using those categories to describe what the Government intends to prove that is inaccurate, much less inflammatory or prejudicial.

With respect to the description of Tucker's spending, those allegations are directly relevant to the charged offenses. Tucker's share of the profits, his use of those profits for personal reasons, and the fact that "Tucker paid for [many of] these personal expenses with funds taken directly from bank accounts nominally in the names of Tribes 1-3 but in fact controlled entirely by Tucker" (¶ 2) further demonstrate that the payday lending businesses were actually his, and that his relationships with the Tribes were shams. Put simply, that Tucker freely paid for obviously personal expenses—such as jewelry and luxury homes—from the lending businesses' accounts, despite those accounts being in the Tribes' names, tends to show that the businesses actually belonged to Tucker. Therefore, far from being surplusage, these allegations are directly relevant to the charged offenses, and will be supported by the Government's proof at trial. *See Scarpa*, 913 F.3d at 1013 ("[I]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken.")

Statements about the financial status of the payday lending customers are also relevant. As the evidence at trial will demonstrate, the Tucker Payday Lenders targeted individuals in need of short-term financial assistance in order to maximize their revenues, and intentionally violated state usury laws designed specifically to protect such individuals. Thus, such evidence is

13

relevant as background to the conspiracy, to show the means and methods used by the defendants, and to explain why the defendants went to such lengths to shield their lending practices from state regulators. *See Hernandez*, 85 F.3d at 1030; *United States* v. *Budovsky*, No. 13 Cr. 368, 2015 WL 5602853, at *15 (S.D.N.Y. Sept. 23, 2015) (the fact that allegations are not essential to charge an offense "is not a basis for striking the allegations").

Allegations concerning the state court lawsuits are also directly relevant to the charged conspiracy. The defendants' efforts to deceive state regulators—through both the formation of sham relationships with Indian tribes and then the filing of false affidavits to defeat enforcement actions—constitute means and methods of the conspiracy, and demonstrate their knowledge of, and intent to evade, state laws. *See, e.g.*, *United States* v. *Silver*, 117 F. Supp. 3d 461, 473 (S.D.N.Y. 2015) ("Evidence that Silver went to lengths to conceal his allegedly ill-gotten gains is evidence both of Silver's knowledge that the money that he received constituted 'criminally derived property'… and evidence of Silver's consciousness of guilt regarding his allegedly fraudulent and extortionate activities."). Therefore, the allegations concerning these lawsuits are neither irrelevant nor unduly prejudicial.

Finally, Muir's motion to strike various other words and phrases in the Indictment should also be rejected. For the reasons discussed, the allegations at issue—such as whether the business relationships in question were "shams" and whether the defendants failed to correct false TILA disclosures—are allegations that the Government intends to prove. Evidence supporting them is plainly relevant to the background of the charged conduct, the means and methods of the conspiracy, and the conduct of the charged offenses. That Muir disagrees with these allegations, and dislikes the way they are phrased, is not grounds to strike them. Because evidence of these allegations is "admissible and relevant to the charge . . . regardless of how

14

prejudicial the language is, it may not be stricken." *Scarpa*, 913 F.3d at 1013; *see also Silver*, 117 F. Supp. 3d at 473 ("The allegations in the Superseding Indictment do not make Silver look like a boy scout, but the Government is entitled to charge that which it can prove by admissible evidence.").

## CONCLUSION

For the reasons set forth above, the Government respectfully submits that the Muir's Motions for a Bill of Particulars and to Strike Surplusage From the Indictment should be denied.

Dated: New York, New York
May 19, 2016

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney
                              Southern District of New York

By:   /s/_____
      Niketh Velamoor/Hagan Scotten
      Assistant United States Attorneys
      Tel.: (212) 637-1076/(914) 993-1924