UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA

                                            16-CR-091 (PKC)

- against -

SCOTT TUCKER AND TIMOTHY MUIR,

                     Defendants.

-----------------------------------------------------------x

## JOINT MEMORANDUM OF LAW OPPOSING
## GOVERNMENT'S MOTION TO APPLY THE CRIME FRAUD EXCEPTION

JAMES M. ROTH
Stampur & Roth
299 Broadway, Suite 800
New York, NY 10007
(212) 619-4240

LEE GINSBERG
NADJIA LIMANI

Attorneys for Scott Tucker


THOMAS J. BATH, JR.
Bath & Edmonds, P.A.
Historic Voigts Building
7944 Santa Fe Drive
Overland Park, Kansas 66204
(913) 652-9800

MARC AGNIFILO

Attorneys for Timothy Muir

Beverly Van Ness, Of Counsel
March 30, 2017

**INTRODUCTION**

The government seeks to apply the crime fraud exception to attorney-client privileged material relating to a 2010 lawsuit filed in Kansas, <u>Scott Tucker v. AMG Services, Inc.</u> (ECF #153). The defendants oppose the motion, and submit this joint response.

**ARGUMENT**

The government argues that the 2008 merger of CLK Management, a Kansas corporation, into AMG Services, Inc., a tribal corporation, was a "sham," and that a 2010 lawsuit that sought recordation of the merger in Kansas was a "sham lawsuit." Relying on the crime-fraud exception, the government asks the Court to give it blanket access to all communications between defendant Scott Tucker and the law firm that handled the lawsuit. As set forth below, the government's allegations fall far short of meeting its probable cause burden. Moreover, additional documents <u>that are in the government's possession</u>, but which it fails to acknowledge, give the lie to some of its key contentions.

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." <u>Upjohn v. United States</u>, 449 U.S.383, 389 (1981). Its purpose is "to foster open communication between attorneys and their clients, so that fully informed legal advice may be obtained." <u>United States v. Jacobs</u>, 117 F.3d 82, 87 (2d Cir. 1997). The privilege thus "play[s] a critical role in our judicial system." <u>In re Richard Roe, Inc.</u>, 168 F.3d 69, 71 (2d Dept. 1999).

The crime fraud exception was crafted as, in effect, a limited, involuntary waiver: it strips the privilege from communications "in furtherance of . . . ongoing criminal or fraudulent

1

conduct." In re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1038 (2d Cir. 1984).  But the privilege is not lightly discarded.  Rather, the movant must establish "probable cause to believe that a crime or fraud ha[s] been committed and that the communications were in furtherance thereof."  Id., at 1039.  Moreover, "a more stringent probable cause standard" applies "'[w]here the very act of litigating is alleged as being in furtherance of a fraud,'" that is, "'the party seeking disclosure . . . must show probable cause that the litigation or aspect therefor had little or no legal or factual basis and was carried on substantially for the purpose of furthering the crime or fraud.'"  In re Grand Jury Subpoenas Dated March 2, 2015, 628 Fed. Appx. 13, 14-15 (2d Cir. 2015), quoting In re Richard Roe, Inc., supra, 168 F.3d 69, 71.

Here, to meet its burden, the government relies on the following:

As "factual background," the government provides more than two paragraphs of allegations supported only by citations to the indictment.  They include the claim that Mr. Tucker "entered into sham business relationships to conceal his ownership and control of the payday lending businesses and to evade applicable state [usury] laws," that he formed relationships with Indian tribes to "create[] the sham appearance of tribal ownership and control of the lenders," and that Mr. Muir "caused a sham lawsuit to be filed by [Tucker] against AMG."

These allegations are entitled to no weight.  "[T]he issuance of an Indictment does not necessarily equate with agreement by the Grand Jury that there is probable cause to believe each alleged fact occurred as stated." United States v. Levin, 2015 U.S. Dist. Lexis 137615, *11-12 (S.D.N.Y. 2015).  Indeed, "[t]here is no basis in the law to find that a complaint asserting fraud or other wrongdoing vitiates the privilege.  If allegations alone could lead to such a result, the attorney-client privilege would be weak indeed."  Here, moreover, the quoted allegations, as to

2

the "sham" nature of the relationships, tribal ownership and control, and the filed lawsuit, are not factual in nature, but conclusory: the parties' evidence on these matters will comprise the bulk of the trial.

Next, in support of its contention that the CLK-AMG merger was a "sham intended to obstruct state enforcement actions against the payday lending business" (ECF #153, p. 4 of 11), the government selectively quotes from a letter it has appended as Exhibit A, from an attorney named Lance Morgan to Don Brady, the chief executive officer of the Miami Tribe (id., p. 3). The letter is dated June 1, 2008, and provides legal advice and opinion on the potential formation of a new tribal corporation and its acquisition of CLK. Despite the sinister spin which the government's selective quoting casts, the letter is actually a straightforward legal opinion about a proposed business deal. It does not support in any way the government's claim that the merger was a "sham."

Quite the opposite, the letter evidences that the purchase and merger was a legitimate course of action that advanced the goal of protecting "the [Tribe's] current business model" and made "economic and legal sense" (letter, p. 2). The attorney notes that the Tribe has asserted a sovereign immunity defense in a pending Colorado lawsuit that is strong – "the State of Colorado is having difficulty getting past [it]" – but that the State has issued a subpoena to CLK in an effort, in the attorney's opinion, to "pressure non-tribal partners who work with tribes to do indirectly what they cannot do directly [to tribes]." Referencing other "contexts" in which attacks have been made against non-tribal companies, the lawyer advises that such indirect pressure "tactics are common" with respect to tribal matters. He noted that in pending litigation, "Colorado is attempting to figure out a way to accomplish their goal of impeding the Miami

Tribe's business model indirectly by attempting to apply pressure on CLK, an entity that doesn't have sovereign immunity," as a way to shut down the tribe's payday lending business. Mr. Morgan then discusses the proposed formation of a tribal corporation into which CLK would merge – both the pros and cons of such a transaction – and recommends going forward.

The government next asserts that the amount paid by the Miami Tribe for CLK, $120,000, was "a paltry sum given the value of the business" (ECF #153, p. 4 of 11). No support is offered for this statement. Moreover, as outlined by Mr. Morgan in the letter to Don Brady discussed above, the contemplated purchase and merger would result in the Tribe assuming all of the liabilities of CLK, and this was "a serious matter" in the attorney's opinion (see p. 2 of letter, Exh. A to ECF #153). Such an assumption of liabilities would certainly affect CLK's purchase price.

The government also alleges, with respect to the merger, that the purchase price was not paid until 2010. It attaches support for this (Exhibit B to its motion), but it does not explain why the delay in payment is indicative of a crime, a fraud, or the supposed "sham" nature of the transaction. There are myriad reasons why payment could have been deferred. Whatever the reason, the government's exhibit merely demonstrates that the delay in payment resulted in AMG incurring interest on the unpaid purchase price – an expected result in commercial transactions.

The government fares no better with its next allegation: "no certificate of merger was filed with the Kansas Secretary of State, which was necessary under Kansas law" (ECF #153, p. 4 of 11). Once again, the government fails to provide any explanation for why this suggests the merger was a "sham," or fraudulent or criminal. Significantly, moreover, documents in the government's possession do explain why the certificate was not filed with the Kansas Secretary

4

of State in 2008, when the merger was accomplished, and the explanation eviscerates the fraud/sham theory articulated in the government's motion. The transactional documents expressly provided that the deal was governed by tribal law, and under that law, the merger was deemed "valid and effective for all purposes" as of June 24, 2008. See Exhibit A attached hereto, letter dated July 26, 2010, from attorney Conly J. Schulte, "legal counsel for AMG Services, Inc.," to R. Pete Smith, Esq., of McDowell, Rice, Smith & Buchanan, P.C.

This letter, together with another letter from attorney Schulte to Don Brady dated August 18, 2010 (attached hereto as Exhibit B), evidence the date of the merger in June 2008, the reason why a certificate of merger was not filed in Kansas at that time (it was not necessary since the merger was governed by tribal law), the reason why AMG would not agree to file a certificate of merger with the Kansas Department of State in 2010 (it could be considered a waiver of tribal sovereign immunity), and the reason why AMG failed to file an answer in the 2010 Tucker lawsuit: "Consistent with our ongoing strategy, AMG did not appear or defend this action because to do so would have been submitting AMG to the jurisdiction of the state of Kansas" (Exh. B); "neither the Miami Tribe nor AMG has consented to the [Tucker] suit, nor will the Tribe and AMG consent to the exercise of jurisdiction over AMG by the State of Kansas for any reason whatsoever" (Exh. A); "the State of Kansas," in the Tribe's counsel's opinion, "would do well to accord full faith and credit to this Tribal law merger. Accordingly, AMG will not answer or otherwise file a responsive pleading to the [Tucker suit] for any purpose" (id.).[1]

---

[1] Notably, Exhibit B is part of the discovery supplied by the government to the defense. We have not been able to locate Exhibit A in the discovery, but the government should have it given that the Miami Tribe has entered into a non-prosecution agreement with the government and has turned over numerous documents to it. In the event that the non-privileged letter from Mr. Schulte to Mr. Smith was not turned over to the government by the Miami Tribe, this is

5

These documents also discredit other allegations the government makes in support of the crime-fraud exception – that the Petition in support of the 2010 lawsuit "misleadingly" stated that AMG had failed or refused to file the certificate of merger, and that the only reason it had not done so was because Mr. Muir, "who supposedly represented AMG, had decided not to do it"; and that "to ensure Tucker would prevail in the lawsuit, Muir also ensured that AMG never responded to the lawsuit, which created the misimpression that AMG was a delinquent litigant" (ECF #153, p. 5 of 11). Again, the government offers nothing in support of these contentions. In actual fact, as evidenced by the letter attached hereto as Exhibit A, attorney Schulte represented AMG in connection with the lawsuit, and he explained that AMG refused to answer the suit for a legitimate, lawful reason: to stand on and preserve its tribal sovereign immunity. For the same reason, it also would not file a certificate of merger with the State of Kansas.

Further explanation for the Tucker lawsuit against AMG, and its timing, is reflected in yet another document provided by the government in discovery but not referred to in the government's motion. In 2009, a lawsuit was commenced in California against numerous entities, including the Miami Tribe and several of its loan portfolios, and subsequently AMG and CLK. In connection with that suit, some defendants, including the Miami Tribe, moved to quash the summons and dismiss the complaint against CLK because it no longer existed, having been merged and dissolved. On June 1, 2010, the plaintiffs filed opposing papers (see Exhibit C attached hereto, papers filed in Rosas v. USFastcash et al). The plaintiffs disputed the merger,

---

additional support for our request that the Court sign subpoenas the defense has submitted with respect to tribal documents. It is our position that either the government should be required to extract a full waiver from the Miami Tribe and disclose all of the relevant documents it has, or permit the defense to obtain those documents by subpoena.

because no certificate of merger had been filed with the Kansas Secretary of State (id., pp. 3-5). Given that AMG would not file the certificate, and Mr. Tucker no longer owned CLK because it had been merged into AMG, a tribal corporation, there was a chance that CLK would have to remain a defendant in the California suit. In that event, Mr. Tucker (as CLK's prior, sole owner) would potentially be individually liable if the California judge agreed with plaintiff's view of Kansas law.

In the ensuing weeks, the matter was researched, and a Kansas statute was identified that became the basis of the Tucker v. AMG lawsuit: K.S.A. §17-7677a, Execution by Judicial Order (repealed in 2015). The suit was filed on July 8, 2010 (see Exhibit C to government's motion). The celebratory emails the government appends to its motion as Exhibits F and G reflected appreciation for the fine lawyering involved in getting the certificate filed, which effectuated the CLK/AMG merger under Kansas law in a manner that preserved AMG's tribal sovereign immunity.

The government's remaining allegation in support of the crime-fraud exception is that Mr. Tucker claimed in the Petition, in support of the suit, that he had no "right to access any of the books and records of CLK . . . even though, in reality, [he] retained complete control of all books, records and bank accounts" (ECF #153, p. 5 of 11). In fact, by the time the lawsuit was commenced, CLK had long since ceased to exist, so the statement in the Petition was true. Moreover, the government provides no support for its "complete control" allegation save for some checks Mr. Tucker signed, on behalf of AMG (not CLK) (see Exhibit D to the government's motion). But the government fails to supply any evidence that Mr. Tucker – who

7

was an employee of AMG after it was formed – did not have authority from the Miami Tribe to write checks on AMG's behalf.

In addition, whatever authority Mr. Tucker had with respect to AMG, he had no access or control in his individual capacity, the capacity in which he sued AMG in 2010. More importantly, the government fails to cite any evidence that Mr. Tucker had any authority, in any capacity, to file a certificate of merger in Kansas on behalf of AMG. It was this lack of authority, and the possibility of significant liabilities from class action lawsuits, that necessitated Mr. Tucker's legitimate lawsuit against AMG.

**CONCLUSION**

The government's allegations fall woefully short of establishing "probable cause to believe that a crime or fraud ha[s] been committed and that the communications were in furtherance thereof." In re Grand Jury Subpoena Duces Tecum, supra, 731 F.2d 1032, 1039. Necessarily, the government has also failed to satisfy the "more stringent probable cause standard" which applies "'where the very act of litigating is alleged as being in furtherance of a fraud,'" namely, a showing of probable cause that the litigation or aspect therefor had little or no legal or factual basis and was carried on substantially for the purpose of furthering the crime or fraud.'" In re Grand Jury Subpoenas Dated March 2, 2015, supra, 628 Fed. Appx. 13, 14-15, quoting In re Richard Roe, Inc., supra, 168 F.3d 69, 71. Indeed, the evidence shows that the lawsuit, far from being a "sham," was a lawful mechanism for getting a state certificate of merger filed when the party who had authority to do so (AMG, owned by the Miami Tribe), would not

8

take that action. The suit was also filed for a valid purpose: to obtain dismissal of non-existent CLK from the Rosas litigation in California.

For the reasons stated, the government's motion should be denied in all respects.

/s/
JAMES M. ROTH
on behalf of Scott Tucker

/s/
THOMAS J. BATH, JR.
on behalf of Timothy Muir