

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 14, 2017

**BY ECF**
Honorable P. Kevin Castel
United States District Judge
500 Pearl Street
New York, N.Y. 10007

Re: *United States* v. *Scott Tucker and Timothy Muir*, 16 Cr. 91 (PKC)

Dear Judge Castel:

The Government respectfully submits this letter in response to defendant Scott Tucker's letter dated March 30, 2017 requesting that the Court grant his request for various subpoenas pursuant to Rule 17 of the Federal Rules of Criminal Procedure. For the reasons stated below, Tucker has not met the standards for pretrial subpoenas set forth in *United States* v. *Nixon*, 418 U.S. 683 (1974), even for the more limited set of documents he is seeking at this time. Accordingly, his requests should be denied.

As the Government predicted at the March 9, 2017 conference, the defendant is now requesting subpoenas to banks primarily in order to obtain records during 2016, but Tucker has still not identified how the records from 2016 would constitute relevant evidence. Tucker claims that he needs the records from 2016 in order to compare the "pattern" of activity in the accounts "both before and after the tribe ended their relationship" with Tucker. However, it is not at all clear how such a comparison could yield evidence of tribal control during the period charged in the indictment. And even if it could, the defendant offers no explanation as to why he needs records from 2016 in order to make such a comparison, particularly since the Miami Tribe, which was Tucker's primary tribal partner, stopped participating in the issuance of payday loans in late 2013 and formally exited the business by January 1, 2015. Nor does the fact that the Government obtained records until 2016 in any way bolster the defendant's position. The fact that bank records were relevant to the Government's investigation, including but not limited to its efforts to identify, trace, and obtain an order restraining forfeitable crime proceeds, is irrelevant to the question of whether records are relevant to the defense of individuals charged in that investigation.

The defendant has also failed to articulate a valid basis for his request for subpoenas for additional financial and corporate documents from the Miami Tribe and certain Miami tribal entities. The defendant acknowledges that the discovery he received includes the kinds of documents he is

requesting, but speculates that there may be more simply because, in his view, the Government's subpoena did not specifically request them. However, plugging perceived holes in the Government's subpoenas with broad requests for "any and all" additional documents, without any reason to believe additional documents actually exist, is not a sufficient basis to obtain Rule 17 subpoenas from the Court. *See United States* v. *Morris*, 287 F.3d 985, 991 (10th Cir. 2002) (finding that a request for a Rule 17(c) subpoenas "does not meet the specificity requirement set forth in Nixon" because "[n]ot only is Mr. Morris unable to specify what the items he requests contain, he is also unable to verify whether the requested material even exists."); *United States* v. *Barnes*, 04 CR 186 (SCR), 2008 WL 9359654, at *4 (S.D.N.Y. Apr. 2, 2008) ("The Defendant blindly seeks 'all' documents and recordings that fall into several categories for an approximate 23–month period rather than identifiable pieces of evidence. The fact that the subpoena is crafted to encompass such a broad swath of items indicates that the subpoena was intended as a discovery device rather than as a mechanism for obtaining specific admissible evidence. Moreover, the Defendant apparently does not know whether or not…some of the documents requested even exist."); *United States v. Louis*, 04 CR 203 (LTS), 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005) ("The subpoena seeks 'any and all' documents relating to several categories of subject matter (some of them quite large), rather than specific evidentiary items, thus clearly indicating that Defendant seeks to obtain information helpful to the defense by examining large quantities of documents, rather than to use Rule 17 for its intended purpose-to secure the production for a court proceeding of specific admissible evidence.").

In this case, there is even less reason to authorize such a fishing expedition because the Government's discovery production includes a large number of documents responsive to Tucker's requests. For example, the defendant acknowledges that general ledgers and year-end trial balances were produced in QuickBooks format but seeks the same kinds of documents in other formats. QuickBooks was the format in which the defendant maintained financial records for the payday loan businesses for most, if not all, of the conspiracy, and the defendant does not claim that such documents exist in other formats.[1] With respect to board minutes and resolutions, counsel for the Miami tribal entities have represented to the Government that after conducting a reasonable search they believe that all non-privileged minutes and resolutions of the boards of directors of the entities that concerned payday lending from 2003 until December 31, 2013 were already produced to the Government. And with respect to organizational charts and policies and procedures, the Government's production includes hundreds of responsive documents from the Miami tribal entities. Since, with respect to all the categories of documents he is seeking, the defendant has failed to offer any reason why additional documents exist, or any reason to believe such additional documents would provide him any evidence beyond what he already has, the defendant's requests should be denied.

Finally, the defendant's request for a subpoena for board minutes and resolutions relating to the Miami Tribe's decision to enter into a nonprosecution agreement with the Government should also be denied. Here, the defendant does not suggest that he is seeking board minutes or resolutions

---

[1] The QuickBooks files produced by the Government may be used by the defendant to generate a variety of financial reports.

because he believes they may constitute admissible evidence. Rather, he claims to be seeking them because he believes they may help him identify witnesses who disagreed with the Tribe's decision to enter into the agreement. That is insufficient. If the defendant is looking to identify witnesses, he does not need the documents he is requesting, which are almost certainly privileged anyway. Rather, he can use the millions of pages of discovery he has received, including numerous board minutes and resolutions, to identify the members and participants in the boards of the various entities. More likely, the defendant is seeking these minutes for the reason stated by counsel at the March 9, 2017 conference – for impeachment material to be used when and if tribal representatives are called to testify for the Government. However, it is well established that Rule 17(c) does not provide a basis for pre-trial "production of materials whose evidentiary use is limited to impeachment." *United States* v. *Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995) (collecting cases). Therefore, the defendant's request for these documents should also be denied.

For the reasons stated above, Tucker has not met the standards for pretrial subpoenas set forth in *Nixon*, and his request for additional subpoenas should be denied.

Respectfully submitted,

JOON H. KIM
Acting United States Attorney
Southern District of New York

By: _____
Niketh Velamoor/Hagan Scotten/Sagar Ravi
Assistant United States Attorneys
Tel.: (212) 637-1076/2410/2195

Cc (by ECF): Counsel for defendants